**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-00376-001-TUC-JCH (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Jesus Ernesto Dessens-Romero, | |
| Defendant. | |

In this case Defendant is charged with 12 counts related to conspiracy to transport and transportation of illegal aliens resulting in a death. *See* Doc. 60 at 1. Before the Court is Defendant's "Motion to Suppress Statements Taken in Violation of *Miranda*." Doc. 69. Defendant argues primarily that his statements were coerced and taken despite his unambiguous request for counsel. *See* Doc. 69 at 1, 8–9. The Court disagrees and will deny Defendant's motion accordingly.

Defendant's motion is appropriate for decision without a hearing because the statements at issue were video recorded, and there were no factual disputes. *See United States v. Howell*, 231 F.3d 615 (9th Cir. 2000) (evidentiary hearing on motion to suppress required only when contested issues of fact exist). Neither party requested a hearing, *see* Doc. 70, and the Government submitted that the issue is appropriate for decision without witness testimony. Doc. 76 at 10. Finally, Rule 41(e) of the Federal Rules of Criminal Procedure provides that the court "shall receive evidence on any issue of fact necessary to the decision of the motion." Here, the circumstances of Defendant's interrogation and

*Miranda* waiver were the subject of a video-taped interview. Doc. 69 at 1. The Court has received transcripts of the interview, translated as necessary from Spanish to English, and viewed a copy of the video. Docs. 69-1, 69-2, 69-3, 74-2. All evidence necessary to decide the motion is thus before the Court.

## I. Legal Standards

A defendant's constitutional rights are violated if police interrogation tactics render the confession involuntary, or if a defendant's confession is obtained in violation of his *Miranda* rights. *See Dickerson v. United States*, 530 U.S. 428, 432–35 (2000) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). The Court will suppress involuntary statements obtained by "techniques and methods offensive to due process." *Haynes v. Washington*, 373 U.S. 503, 515 (1963). A statement is involuntary if "the defendant's will was overborne at the time he confessed." *Id.* at 513. There is no "talismanic definition of 'voluntariness'" that is "mechanically applicable." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973). Rather, the Court assesses the totality of all the surrounding circumstances. *Id.* at 226. Those circumstances include "not only the crucial element of police coercion," but also the length of the interrogation, its location, and its continuity. *Withrow v. Williams*, 507 U.S. 680, 693 (1993). They may also include the failure of the police to advise the suspect of his rights, *Haynes*, 373 U.S. 503, 516–17 (1963), as well as any direct or implied promises of a benefit. *Brady v. United States*, 397 U.S. 742, 753 (1970).

A defendant's constitutional rights are also violated by failure to comply with *Miranda*. *Miranda* and its progeny govern the admissibility of statements made during custodial interrogation. *Dickerson*, 530 U.S. at 432. Statements made while a defendant is in "custody or otherwise deprived of [his] freedom of action in any significant way" that are not preceded by *Miranda* warnings are inadmissible in evidence. *Miranda*, 384 U.S. at 444. For incriminating statements obtained during a custodial interrogation to be admissible, any waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *See id.* at 479. A waiver of *Miranda* rights "is knowing and intelligent if, under the totality of the circumstances, it is made with a full awareness of both the nature of the right being

abandoned and the consequences of the decision to abandon it." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citations and quotations omitted).

After a defendant has been informed of his *Miranda* rights, officers conducting a custodial interrogation have no obligation to stop and clarify an ambiguous invocation by the defendant of his right to have counsel present. *Davis v. United States*, 512 U.S. 452, 459–60 (1994). Instead, they must cease interrogation only upon an objectively unambiguous, unequivocal invocation of that right. *See id.* at 462("maybe I should talk to a lawyer" is ambiguous); *Petrocelli v. Baker*, 869 F.3d 710, 723 (9th Cir. 2017) ("I'd sort of like to know what my … lawyer wants me to do" is ambiguous); *United States v. Younger*, 398 F.3d 1179, 1187–88 (9th Cir. 2005) ("[B]ut, excuse me, if I am right, I can have a lawyer present through all this, right?" is ambiguous); *United States v. Doe*, 170 F.3d 1162, 1166 (9th Cir. 1999) ("What time will I see a lawyer" is ambiguous). By contrast, an unequivocal invocation requires law enforcement officers to immediately cease questioning. *See Jones v. Harrington*, 829 F.3d 1128, 1137–39 (9th Cir. 2016). The Court recognizes that this standard "might disadvantage some suspects who—because of fear, intimidation, lack of linguistic skills, or a variety of other reasons—will not clearly articulate their right to counsel although they actually want to have a lawyer present." *Davis*, 512 U.S. at 460.

**II.   Analysis**

This dispute is somewhat academic because the Government does not intend to introduce Defendant's statements made during the video-taped interview on November 1, 2021. Doc. 76 at 4. In any event, the Government is entitled to do so.

Here is what happened. On November 1, 2021, Defendant was in Tennessee custody on an unrelated matter. Doc. 69 at 1. Two Tennessee agents interviewed Defendant, with agents from Arizona, including Assistant United States Attorney Rui Wang, appearing telephonically. Doc. 76 at 2. Shortly after the interview began, AUSA Wang sought to clarify that the Arizona agents were interested in a matter unrelated to Defendant's Tennessee case. *See* Doc. 69-2 at 2. AUSA Wang said,

> [M]y guess is he's represented, and he's already pending charges on [] some other stuff, so … if you can let him know that we're only here to ask him questions about … completely separate things from whatever … he's in [Tennessee custody] for. …. I just wanted to clarify that.

*Id.* A Tennessee agent asked Defendant, "[D]id you understand what she said?" *Id.* Defendant replied, "I did." *Id.* The Tennessee agent repeated, "We're not here to ask you any questions about your case that's going on right now. Because you already have a lawyer." *Id.* at 3. Defendant replied, "Alright." *Id.* The Tennessee agent repeated, "[T]he questions that we ask you, even though we might have asked you before, they're not related to this case at all." *Id.* Defendant replied, "Alright." *Id.* Defendant then asked, "It's something else?" *Id.* The Tennessee agent confirmed, "It's … something else." *Id.* at 4.

The Tennessee agent then read Defendant his *Miranda* warnings in Spanish. Doc. 69-2 at 4. The agent said, "I'm gonna read you your rights one more time, okay? …. And my Spanish is not as good as yours." *Id.* Defendant replied, "I already … hear you the last time." *Id.* Both Defendant and the agent are referring to *Miranda* warnings given in Spanish in a previous interview. *See* Doc. 76 at 2; Doc. 74-1. The Tennessee agent said, "I'll let you look at [the *Miranda* warnings] with me, so while I read it you can … read it along with me, okay?" *Id.* at 4–5. The agent then read Defendant the *Miranda* warnings in Spanish. *See id.* at 5. At one point, the agent stumbled in Spanish, and Defendant offered the correct word. *Compare id.*, *with* Doc. 74-2 at 10:25:37–39. The warnings concluded, "[If you decide to answer the questions now, you still have the right to stop the questioning at any time, or to stop the … questioning to consult with [an] attorney]." *Id.* (English translation).

At this point, the following contested interaction occurred in English.

[Defendant]: And where is my lawyer now?
[Agent]: Where is your lawyer?
[Defendant]: Yeah.
[Agent]: Your- your lawyer for Robertson County, for this case?
[Defendant]: Yeah.
[Agent]: I have no idea. Again, we are not asking questions about that case.
[Defendant]: Alright. No, I'm gonna answer to you. I'm believing you. I'm gonna answer to you.

Doc. 69-2 at 5–6; Doc. 74-2 at 10:26:15–10:26:31. Defendant then signed and dated a

Spanish-language *Miranda* waiver. *See id.* at 6; Doc. 76-4 at 2.

Considering the totality of the circumstances, Defendant's statements and his *Miranda* waiver were voluntary. There is no evidence of coercion. The mere presence of police at a police interrogation is not inherently coercive. *Cf. Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). The total interview is not long, just under two hours, Doc. 76 at 8, Doc. 74-1 at 10:22:30–12:18:15, and Defendant was kept waiting less than half an hour before it began. *See* Doc. 69-1 at 1. The agents repeatedly confirmed Defendant's understanding of the difference between the Tennessee case and the interview's purpose. And the agents read the *Miranda* warning in Spanish to Defendant and allowed Defendant to read the warning in Spanish. Defendant read along while the Tennessee agent read aloud, as evidenced by Defendant's quick correction of the agent's Spanish pronunciation of "judicial." Defendant demonstrated his comprehension of English and familiarity with *Miranda* throughout the start of the interview. Finally, the agents did not promise or threaten any result if Defendant did or did not talk to them. *Cf. United States v. Okafor*, 285 F.3d 842, 846-47 (9th Cir. 2002) (distinguishing between threats and accurate descriptions of a potential sentence given the charges).

Whether Defendant's waiver was knowing and intelligent is a closer question. Right to counsel is offense specific. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Defendant argues, in essence, that he did not understand that distinction or realize that he was entitled to a lawyer in both the Arizona case and the Tennessee case. *See* Doc. 69 at 9. Some aspects of the record could support that view. For example, before receiving the *Miranda* warnings Defendant says, "I already … hear you the last time." That could suggest that Defendant did not understand why *Miranda* warnings were newly required. Similarly, after receiving the *Miranda* warnings Defendant asks, "And where is my lawyer now?" That could suggest that Defendant did not understand that his Tennessee lawyer or any other lawyer would not appear unless he invoked his right to counsel.

Despite a limited basis in the record, the Court finds any inference that Defendant did not understand his rights unwarranted. First, the *Miranda* warnings Defendant heard

clearly apply to all cases. For example, the Tennessee agent told Defendant, "[You have the right to consult with an attorney before you make any statement or answer any question]," Doc. 69-2 at 5 (English translation). The words "*any* statement or answer *any* question" are sufficiently universal to convey the universal contours of the right. Second, the context of the *Miranda* warnings made clear that Defendant could request an attorney before answering questions about the Arizona case. Before Defendant heard the *Miranda* warnings, AUSA Wang takes care to explain the difference between the two cases. There is no indication that Defendant could not hear that portion of the discussion, or that his English comprehension was inadequate to understand it. Defendant even confirms he understands that it is a different issue. And, as discussed in more detail below, Defendant's question about his lawyer was immediately clarified. The Tennessee agent confirms Defendant is referring to his Tennessee lawyer and emphasizes that the questions do not have to do with the Tennessee matter. Defendant replies, "Alright. No, I'm gonna answer to you. I'm believing you." In context, Defendant means that he believes the agents will not question him about the Tennessee matter and will answer their questions about the Arizona matter. The final question, then, is whether Defendant invoked his right to an attorney unambiguously, such that questioning should have ceased.

Defendant's statement "And where is my lawyer now?" was ambiguous because it could have meant at least (1) "If I am entitled to a lawyer, why isn't one here?" or (2) "Where is the lawyer from my Tennessee case?" Notably, neither question implies "I want my lawyer before proceeding further." Even had Defendant's interrogation begun at that point, no reasonable officer would think Defendant's right to counsel had been invoked. Instead, faced with an ambiguous question, the Tennessee agent reasonably followed up by asking a clarifying question. Defendant clarified that he was asking where his Tennessee lawyer was. When the agent said he did not know where Defendant's Tennessee lawyer was and emphasized "We are not asking you questions about that case," Defendant immediately said, "Alright. No, I'm gonna answer to you. I'm believing you." In that context, "I'm believing you" meant that Defendant believed the agents were not questioning

him about his Tennessee case. Together with "Alright" and "I'm gonna answer to you," Defendant's statements clearly signaled that he was not invoking his right to counsel, ambiguously or otherwise.

For those reasons, Defendant's constitutional rights were not violated either through police interrogation tactics rendering his statements involuntary, or through violation of Defendant's *Miranda* rights.

### III. Order

Accordingly,

**IT IS ORDERED DENYING** Defendant's Motion (Doc. 69).

Dated this 23rd day of October, 2023.

John C. Hinderaker
United States District Judge